UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
WILLIAM T. THOMAS,

                              Plaintiff,                           **OPINION & ORDER**

   - against -                                                 No. 20-CV-2738 (CS)

C.R. BARD, INC. a foreign corporation, and
BARD PERIPHERAL VASCULAR, INC.,

                              Defendants.
-------------------------------------------------------------x

Appearances:

Philip M. Busman
Nelson Mullins Riley & Scarborough LLC
Washington, D.C.

Elizabeth A. Falconer
Nelson Mullins Riley & Scarborough LLC
Atlanta, GA

Toby S. Soli
Greenberg Traurig, LLP
New York, N.Y.
*Counsel for Defendants*

Seibel, J.

      Before the Court is the motion for summary judgment of Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard"). (ECF No. 44.) For the following reasons, Defendants' motion is GRANTED.

I.  **BACKGROUND**

The following facts are based on Defendants' Local Civil Rule 56.1 Statement, (ECF No. 47 ("Ds' 56.1 Stmt.")), and supporting materials, and are undisputed except as noted.[1]

A.  **Facts**

Plaintiff William T. Thomas suffered from left lower extremity deep vein thrombosis ("DVT") and pulmonary emboli ("PE"). (ECF No. 46-1 at 4; Fact Sheet at 6.) On July 17, 2014, non-party Dr. Andrei Frost implanted a Denali® Filter (the "Filter"), manufactured by Bard, in Plaintiff's inferior vena cava ("IVC"), which is the largest vein in the body. (Ds' 56.1 Stmt. ¶¶ 1, 15.) The Filter is a prescription device and has been cleared by the FDA through the 510(k) process detailed in the Food, Drug, and Cosmetic Act. (*Id.* ¶ 14; ECF No. 46-5 at 2-4.) It has a conical shape, with two tiers of struts consisting of six "arms" and six "legs." (Ds' 56.1 Stmt. ¶ 15; ECF No. 46-6 at 1.) Once implanted into the IVC, the arms and legs open and anchor the Filter to the IVC's walls. (Ds' 56.1 Stmt. ¶ 15; ECF No. 46-6 at 1.) The Filter prevents blood

---

[1] Plaintiff did not file a responsive Rule 56.1 Statement or any papers in opposition to this motion. Local Civil Rule 56.1 requires that the party opposing a motion for summary judgment submit a counterstatement responding to the moving party's statement of material facts, indicating which facts are admitted and which the opposing party contends are in dispute and require a trial. L.R. 56.1(b). Under the Local Rule, "[i]f the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) (citing L.R. 56.1(c)). *Pro se* litigants are not excused from this requirement. *SEC v. Tecumseh Holdings Corp.*, 765 F. Supp. 2d 340, 344 n.4 (S.D.N.Y. 2011). As Defendants served Plaintiff with the requisite notice pursuant to Local Civil Rule 56.2, (*see* ECF No. 45), I have discretion to consider any properly supported facts in Defendants' Local Civil Rule 56.1 Statement admitted. But granting Plaintiff solicitude, I have considered the excerpts of Plaintiff's deposition testimony provided by Defendants, (ECF No. 46-3 ("P's Depo. 1"); ECF No. 46-4 ("P's Depo. 2")), statements in his Complaint, (ECF No. 1 ("Comp.")), and his Fact Sheet, (ECF No. 46-2 ("Fact Sheet")). *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.") (cleaned up).

clots in the "deep veins of the body" from traveling to the heart or lungs, thereby stopping a possible PE, which can lead to chest pain, shortness of breath, and death.  (Ds' 56.1 Stmt. ¶ 15; ECF No. 46-6 at 1.)  IVC filters, like the one implanted here, are often used in patients who have DVT or blood clots to reduce the risk of PE.  (Ds' 56.1 Stmt. ¶ 16.)  The Filter is not sold directly to patients.  (*Id.* ¶ 17.)

Plaintiff alleges that since the Filter was implanted, he has spit up blood, felt depressed, and been "scared to go to the hospital."  (Fact Sheet at 14.)  Plaintiff testified that "[a]s soon as they did the congestive heart failure procedure, and they put the filter in, that's when everything started happening to me.  I start[ed] throwing up blood every day.  I was coughing more.  My stomach was hurting a lot" and "I was vomiting a lot of blood, and when I was getting up I was getting a sharp pain in my abdomen."  (P's Depo. 1 at 51:12-25, 60:15-21.)  Plaintiff also alleges that he can now no longer participate in martial arts and dancing due to alleged complications from the implantation.  (Fact Sheet at 20.)  Plaintiff also suffers from gout, which causes pain and makes it harder to move around, walk, dance, and do martial arts.  (P's Depo. 1 at 28:10-29:20, 33:16-34:17.)

Plaintiff is suspicious that the doctors who implanted the Filter were trying to intentionally harm him.  (*Id.* at 66:15-18.)  He testified that, after going to the hospital because he was throwing up blood,

> [The doctors] tried to say I had TB.  Then they quarantined me and they did all other stuff, and I was telling them it ain't that, it's the filter, and they tried to push it under the table, they tried to hide it, and they started giving me all these other[] tests for other stuff to find out that I had none of that crap, as I told them.  But, of course, they're going to do that to protect themselves because everything is corrupt.

(*Id.* at 67:11-22; *see id.* at 66:19-67:10, 67:23-68:6.)  According to Plaintiff, he never received tests or imaging to see whether there were any issues with the Filter.  (*Id.* at 72:12-17, 74:2-6.)  He testified this is because

3

>these doctors are on some other stuff, they're basically trying to harm me, so I stopped going for awhile from fear that they were trying to do something to me, take my life basically. Because when nobody is listening to you and you're telling them, and they clearly see you spitting up blood, then there's a problem. If they're not acknowledging that, then there's a problem.

(*Id.* at 65:12-21.)  To date, no doctor has told Plaintiff that the reason he was spitting up blood had to do with his Filter. (*Id.* at 75:19-23; P's Depo. 2 at 146:6-11.) When he asked his doctor about having the Filter removed, she told him there was no medical reason to remove it. (P's Depo. 1 at 78:7-19; *see* Fact Sheet at 8.) He testified that he does not remember having conversations about the Filter at the time of implantation, but he later became aware that the doctors had used an IVC filter to prevent a possibly deadly PE. (P's Depo. 2 at 101:4-102.17.)

    **B.**    **Procedural History**

Plaintiff filed this case in the District of Arizona on June 20, 2016, as part of a multidistrict litigation ("MDL"), *In re Bard IVC Filters Products Liability Litigation*, No. 15-MD-2641. (Compl.) Plaintiff alleged fifteen different claims against Defendants, including strict liability (for manufacturing defect, design defect, and failure to warn); negligence (for design defect, manufacturing defect, failure to recall, and failure to warn); negligent misrepresentation; negligence *per se*; breach of warranty (both express and implied); fraudulent misrepresentation; fraudulent concealment; consumer fraud and unfair and deceptive trade practices; and loss of consortium. (*Id.* ¶ 12.) Starting on March 5, 2020, Senior Judge David G. Campbell ordered that cases that had not settled or were not close to settling be transferred to appropriate jurisdictions for discovery and trial. *In re Bard IVC Filters Prods. Liab. Litig.*, No. 15-MD-2641, 2020 WL 1070328 (D. Ariz. Mar. 5, 2020). Judge Campbell remanded this matter back to this Court from the MDL on the same date. (ECF Nos. 5-8.) It was reassigned to the undersigned on July 21, 2020. The Court held an initial conference with the parties on August 28, 2020, (*see* Minute Entry dated Aug. 28, 2020), following which a discovery plan and

4

scheduling order was entered, (ECF No. 18).  On July 20, 2021, the Court was informed by Plaintiff's local counsel that Plaintiff's attorney of record had passed away.  (ECF No. 21.)  The Court paused the discovery schedule to provide Plaintiff time to obtain new counsel.  (ECF No. 22.)

On September 29, 2021, the Court held a status conference, at which the Court told Plaintiff that he would have to proceed *pro se* if he could not find new counsel.  (Minute Entry dated Sept. 29, 2021.)  After extending the discovery schedule two more times, (ECF Nos. 29, 33), the Court held another status conference and set a briefing schedule for Defendants' anticipated motion for summary judgment, (*see* Minute Entry dated June 2, 2022).  The Court also set a deadline for Plaintiff's expert disclosures, (*id.*; *see* Ds' 56.1 Stmt. ¶ 18), but Plaintiff failed to disclose any experts for his case, (Ds' 56.1 Stmt. ¶ 19).  Defendants submitted their motion and supporting papers, (ECF Nos. 44-49), but Plaintiff has not opposed this motion.

## II.     LEGAL STANDARD

### A.     Motion for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (cleaned up).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where a declaration is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

6

Where, as here, the non-moving party fails to respond to the movant's summary judgment motion, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (cleaned up). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." *Id.* (cleaned up).

### B.  *Pro Se* Plaintiffs

*Pro se* litigants must be afforded "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), "particularly where motions for summary judgment are concerned," *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014).

### III.  DISCUSSION

Defendants argue that summary judgment should be granted on all fifteen of Plaintiff's claims because he provides no evidence that "a defect in the Filter or its accompanying warnings" caused any of his injuries. (ECF No. 48 ("Ds' Mem.") at 2.) Defendant principally argues that because Plaintiff failed to designate any expert to show causation, there are no fact issues requiring a trial. (*Id.*); *see Olivier v. Advanced Sterilization Prods., Inc.*, No. 05-CV-4001, 2008 WL 11433209, at *5 (E.D.N.Y. June 11, 2008) ("[C]ausation is an element not only in strict products liability claims, but in negligence, breach of warranty, fraud, misrepresentation and per se negligence claims as well.") (cleaned up); *Marshall v. Hyundai Motor Am.*, 334

F.R.D. 36, 59 (S.D.N.Y. 2019) (causation is element of violation of New York consumer protection and deceptive practices statute).[2]

As in any products liability or personal injury action, Plaintiffs must prove causation – that the Defendants' medical device proximately caused Plaintiff's injuries. *See Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 888 (E.D.N.Y. 2018) ("In order to adequately plead a claim with regard to any of these four theories, the plaintiff must show that the product at issue was defective and that the defectively designed product was the actual and proximate cause of the plaintiff's injury"); *see also, e.g.*, *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 387 F. Supp. 3d 323, 336 (S.D.N.Y. 2019) (in medical device cases, "[i]t is black-letter law that a plaintiff, seeking to prevail on a personal injury claim, must show causation"), *aff'd*, 982 F.3d 113 (2d Cir. 2020); *In re Bausch & Lomb Inc. Contacts Lens Sol. Prods. Liab. Litig.*, 693 F. Supp. 2d 515, 520 (D.S.C. 2010) ("[C]ausation is a required element in every product liability case."), *aff'd sub nom. Fernandez-Pineiro v. Bausch & Lomb, Inc.*, 429 F. App'x 249 (4th Cir. 2011) (*per curiam*).

Where a causal link is beyond the knowledge or expertise of a lay jury, "expert testimony is required to establish causation." *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004). Thus, plaintiffs in products liability cases generally "must offer admissible expert testimony regarding both general causation . . . and specific causation."[3] *Amorgianos v. Nat'l R.R.*

---

[2] The Court will send Plaintiff copies of any unpublished decisions cited in this Opinion and Order.

[3] General causation means that the product can cause the injury, and specific causation means that the product in fact caused the injury in plaintiff's particular case. *In re Rezulin Prods. Liab. Litig.*, 441 F. Supp. 2d 567, 575 (S.D.N.Y. July 26, 2006) ("General causation bears on whether *the type of injury at issue can be caused or exacerbated* by the defendant's product, while specific causation addresses whether, in the particular instance, the injury *actually was caused or exacerbated* by the defendant's product.") (emphasis in original) (cleaned up).

*Passenger Corp.*, 303 F.3d 256, 268 (2d Cir. 2002).[4]  Defendants argue that expert testimony is required here, (Ds' Mem. at 6-12), and the Court agrees.

To start with the obvious, it is not common knowledge that a filter implanted in the IVC could or would cause one to cough up blood or have abdominal pain.  "[C]ases involving pharmaceuticals, toxins or medical devices involve complex questions of medical causation beyond the understanding of a lay person," and thus expert testimony is required.  *In re Baycol Prods. Litig.*, 321 F. Supp. 2d 1118, 1126 (D. Minn. 2004); *see, e.g.*, *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 972 (4th Cir. 1990) ("An essential element of plaintiffs' cause of action is proof that defendant's vaccine caused plaintiffs' injuries, and proof of causation must be by expert testimony"); *Krasnopolsky v. Warner-Lambert Co.*, 799 F. Supp. 1342, 1348 (E.D.N.Y. 1992) ("Notably, the [plaintiffs] have failed to submit any type of expert proof, in an affidavit or otherwise, which would establish any causation between [plaintiff's] injury and the alleged negligence of [defendant]."); *Meiselman v. Crown Heights Hosp.*, 285 N.Y. 389, 396 (1941) ("Ordinarily, expert medical opinion evidence, based on suitable hypotheses, is required, when the subject-matter to be inquired about is presumed not to be within common knowledge and experience and when legal inference predominates over statement of fact . . . ; but where the matters are within the experience and observation of the ordinary jurymen from which they may draw their own conclusions and the facts are of such a nature as to require no special knowledge or skill, the opinion of experts is unnecessary.").  "In a case such as this where there are complex medical issues, in order for plaintiff to prove that her alleged injuries were caused by

---

[4] "[A]l jurisdictions have a similar rule requiring expert testimony where a matter is outside the ken of an ordinary lay juror." *In re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d 304, 313 (S.D.N.Y. 2016), *aff'd*, 713 F. App'x 11 (2d Cir. 2017).

9

[defendants'] products, she must introduce expert medical testimony establishing causation," *Alaimo v. 3M Co.*, No. 05-CV-5281, 2007 WL 9728916, at *5 (S.D.N.Y. June 18, 2007) (cleaned up), because without it the jury is left to speculate on medical issues with which the average person is unfamiliar.[5] *See Hughes v. Stryker Sales Corp.*, No. 08-CV-655, 2010 WL 1961051, at *5 (S.D. Ala. May 13, 2010) ("In the typical case involving a complex medical device, the absence of expert testimony would force a jury to engage in speculation and conjecture on issues of defect and causation [so] courts routinely require expert testimony in such matters."), *aff'd sub nom. Hughes v. Stryker Corp.*, 423 F. Appx. 878 (11th Cir. 2011).

Thus, summary judgment is appropriate where required expert testimony is absent from the record. *See In re Mirena II*, 387 F. Supp. 3d at 342; *see also, e.g., C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 838 (7th Cir. 2015) ("With no experts to prove causation . . . the appellants cannot prove their toxic-tort case . . . [and] summary judgment . . . was proper.") (cleaned up); *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1203 (11th Cir. 2010) ("[W]ithout this [expert] testimony there is no genuine dispute of material fact regarding causation . . . [and] the district court's grant of summary judgment on [plaintiff's] sole remaining claim was appropriate."); *Ronwin v. Bayer Corp.*, 332 F. App'x 508, 514 (10th Cir. 2009) (affirming district court conclusion that "absent expert testimony on causation, summary judgment was appropriate"); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 956 (D.

---

[5] *See also Lewis v. Johnson & Johnson*, 601 F. App'x 205, 210-11 (4th Cir. 2015) ("[P]roof other than expert testimony provides sufficient evidence of causation only when a layperson's general experience and common understanding would enable [him/her] to determine from the evidence, with reasonable probability, the causal relationship between the defect and the injury.") (*per curiam*) (cleaned up); *Phelps v. Wyeth, Inc.*, 938 F. Supp. 2d 1055, 1068 (D. Or. 2013) ("The purpose of the requirement for a showing of reasonable medical probability of causation in cases involving complex medical questions is to prevent jurors from speculating about causation in cases where that determination requires expertise beyond the knowledge and experience of an ordinary lay person.") (cleaned up).

Minn. 2009) ("[A]bsent an admissible general causation opinion, Plaintiffs' claims necessarily fail and [defendant's] motion for summary judgment must be granted."); *Kilpatrick v. Breg, Inc.*, No. 08-CV-10052, 2009 WL 2058384, at *11 (S.D. Fla. June 25, 2009) ("In the absence of any reliable expert evidence on causation, summary judgment must be granted in favor of [defendant]."), *aff'd*, 613 F.3d 1329 (11th Cir. 2010).

Here, Defendants argue that expert testimony is required to prove both that a defect in the Filter can cause individuals to spit up blood – *i.e.*, general causation – and that a defect in the Filter caused Plaintiff to spit up blood – *i.e.*, specific causation – because "the Filter is a complex prescription-only medical device[]," and "that question necessarily focuses on scientific questions beyond the understanding of lay jurors." (Ds' Mem. at 9.) Plaintiff has not provided any expert evidence to show causation. He alleges that after the Filter was implanted, he began spitting up blood, (Fact Sheet at 13-14), but correlation is not causation. *See In re Mirena II*, 387 F. Supp. 3d at 339 ("To assure reliable outcomes in a circumstance where the origins of an injury are not obvious or within the scope of a lay juror's everyday experience, and to avoid the risk that juries would equate correlation (the fact that a given plaintiff used a product and developed injuries) with causation, it is imperative that the factfinder be presented evidence that the product was capable of causing the injury of which a plaintiff complains."). Expert testimony would be required to prove that a defect in the Filter can cause individuals to spit up blood *and* the Filter caused Plaintiff to spit up blood. *See id.* at 343 ("This Court is unaware of any complex medical liability case in which, in the absence of expert evidence as to general causation, a plaintiff's claim has been sustained as viable."); *Fane v. Zimmer, Inc.*, 927 F.2d 124, 131 (2d Cir. 1991) (device implanted in patient "was not one with which an ordinary person would come into

11

contact" and issue of causation in "complicated medical case . . . was one beyond the sphere of the ordinary juryman and required expert testimony").

In the absence of expert testimony, all that remains before the Court are Plaintiff's conclusory and speculative allegations that his symptoms – mainly spitting up blood – were caused by the Filter.  (Fact Sheet at 14.)  His allegations, on their own, are not evidence, so there is no evidence from which a reasonable jury could conclude that Defendants' product caused his injuries.  *See Montessi v. Am. Airlines, Inc.*, 935 F. Supp. 482, 486 (S.D.N.Y. 1996) ("[T]he bald statement . . . that [plaintiff] is suffering . . . ailments as a result of the incidents complained of – is the epitome of a legal conclusion and thus insufficient to establish a genuine issue of material fact for trial.") (cleaned up).  Given that "whether the action is pleaded in strict products liability, breach of warranty or negligence, it is a consumer's burden to show that a defect in the product was a substantial factor in causing injury," *Plemmons v. Steelcase Inc.*, No. 04-CV-4023, 2007 WL 950137, at *5 (S.D.N.Y. Mar. 29, 2007), and Plaintiff has failed to provide any such evidence, let alone expert testimony, the jury would be "left to speculate on medical issues with which the average person is unfamiliar."  *In re Mirena*, 202 F. Supp. 3d at 311 (S.D.N.Y. 2016).

As all of Plaintiff's claims require a showing that his injuries were caused by Defendants' product, they are dismissed.  *See Alaimo*, 2007 WL 9728916, at *2, *6 (dismissing all claims, including product liability, breach of warranties, and loss of consortium claims, where plaintiffs did not present competent expert testimony as to causation); *Olivier*, 2008 WL 11433209, at *9 ("[P]laintiff can produce no expert testimony, case reports, or epidemiological studies indicating that glutaraldehyde can cause or contribute to the development of interstitial lung disease. . . . [A]ll of plaintiff's claims – be they in strict products liability, negligence, breach of express or

implied warranty, fraud, [or] misrepresentation . . . – depend on plaintiff's ability to demonstrate that Cidexplus caused his illness.")

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 44), enter judgment for Defendants, and close the case.

**SO ORDERED.**

Dated: November 7, 2022
         White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.